```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                     NORTHERN DIVISION


UNITED STATES OF AMERICA

VS.                              CRIMINAL NO. 3:33-CR-00036-TSL-FKB

THOMAS W. DOUGLAS, JR.
AND JOHN R. WELCH, SR.                                   DEFENDANTS
```

ORDER

The government has moved for pretrial admission of the testimony of its regulatory expert, Krystal Rudolph, **Dkt. 140**.[1] Defendant Thomas W. Douglas, Jr. has responded in opposition to the motion. The court, having considered the motion and response, will reserve ruling on the motion and provide Douglas an opportunity to file a Daubert motion as to Rudolph.

The government seeks to offer Rudolph as an expert witness to testify about "[f]ederal statutes and regulations applicable to facilities generating non-residential waste-water, the proper manner of disposal for such wastes, and the permitting and notice requirements that such facilities must provide Federal, state, and local regulatory authorities." The government submits that "[p]roviding such testimony early in the case will

---

[1] As the issues raised by Douglas with respect to Rudolph are addressed in his response to the government's motion, Douglas's "placeholder" motion regarding Rudolph, **Dkt. 150**, is **denied** as moot.

1

help the jury understand the regulatory landscape for the disposal of non-residential wastewater."

Rule 702 of the Federal Rules of Evidence requires that a qualified expert witness (1) base her opinions on sufficient facts or data; (2) utilize reliable principles and methods in forming opinions; and (3) reliably apply the principles and methods to the facts of the case.  Under Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 590-93, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the court is charged to serve as a gatekeeper to ensure that expert testimony is admitted only if it is both relevant and reliable.  By its motion, the government is asking the court for a pretrial ruling that Rudolph's testimony satisfies these requirements of relevance and reliability.  In response to the motion, Douglas "does not dispute ... that the testimony of properly qualified regulatory experts—where such testimony assists the trier of fact and does not improperly assume the role of the court—can sometimes be appropriate," and he does not dispute that regulatory expert testimony would be relevant in this case.  In fact, he states that he plans to offer his own regulatory expert: "Just as the Government intends to call Rudolph to opine on the MDEQ's regulatory framework, Mr. Douglas intends to call a highly-qualified, experienced expert, Donna Stephenson, to opine on the same issues."  He opposes the government's motion, though, arguing that "[t]he pre-trial

2

admission of Rudolph's testimony would deprive [him] of a critically important opportunity to cross-examine Rudolph on the bases of her opinions *in front of the jury*, questioning that could go not only to the weight of the evidence, *but to the admissibility of much of it*." (Emphasis added). He pointedly argues that the court should "await trial to determine whether [Rudolph] has been properly qualified and [whether] the various components of the witness's testimony are properly founded and justified by facts, methodology, and the other factors that must underlie admissible expert testimony."

Douglas's response signals to the court that Douglas may attempt not only to raise a Daubert objection at trial to some or all of Rudolph's testimony but to do so in front of the jury. While the Fifth Circuit has held that a district court has "broad discretion in determining how to perform its gatekeeper function, and nothing prohibits it from hearing a Daubert motion during trial," United States v. Wen Chyu Liu, 716 F.3d 159, 168 n.19 (5th Cir. 2013) (quotation marks omitted), for a party to await trial to raise such an objection would be risky in any case, as the Fifth Circuit has also held that "[a] Daubert objection not raised before trial may be rejected as untimely," id. In this case, the court, in its discretion, will not permit Douglas to raise such an objection at trial, for these reasons.

3

First, the court's role as gatekeeper is to prevent the jury from being exposed to expert testimony that is not relevant and reliable. While Douglas argues that a pretrial ruling that Rudolph's testimony is admissible would deprive him of the opportunity to challenge the admissibility of her testimony in front of the jury, it would be contrary to the court's role as gatekeeper to permit such a challenge to be made in the jury's presence. Carlson v. Bioremedi Therapeutic Systems, Inc., 822 F.3d 194, 201 (5th Cir. 2016) (recognizing it is district court's "gatekeeping function to determine the admissibility of evidence outside of the presence of the jury"); Atlantic Specialty Ins. Co. v. Porter, Inc., Civ. No. 15-570, 2016 WL 6569346, at *3 (E.D. La. Nov. 4, 2016) ("In Daubert, the Supreme Court's overriding concern was the problem of exposing the jury to confusing and unreliable expert testimony."); U.S. v. Holy Land Foundation For Relief and Dev., Criminal Action No. 3:04-CR-240-G, 2007 WL 2059722, at *8 (N.D. Tex. July 16, 2007) (ordering that "[a] Daubert hearing will be held *before this witness is allowed to give testimony in front of the jury*.")(emphasis added)). For this reason, Daubert hearings, if required, are most often conducted in advance of trial; and although courts do also hold Daubert hearings during trial, they do so *outside the presence of the jury* (and typically based on motions filed in advance of trial). See, e.g, Tajonera v. Black Elk Energy

4

Offshore Operations, L.L.C., 2016 WL 8274173, at *9 (E.D. La. 2016). Thus, even if the court were inclined to allow Douglas to raise a Daubert challenge during trial, he would not benefit in the way he apparently intends, as the court would not permit his challenge to be made in front of the jury.[2]

Further, the trial of this case is estimated by defendants to last three weeks or longer. To hear and resolve during trial a Daubert objection – a process which itself could prove time-consuming - would needlessly prolong the trial, impose an unwarranted burden on the jury and be wholly inefficient. The government has disclosed to defendants Rudolph's qualifications and proposed testimony,[3] yet despite being as informed and capable now as he will be at trial to challenge the admissibility of her testimony, Douglas has not moved under Daubert for pretrial exclusion of her testimony, in whole or in

---

[2] That is not to say that the court would not provide Douglas a full opportunity for cross-examination of the witness in the jury's presence. See Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Nor does the court suggest that Douglas could not make other appropriate objections to her testimony.

[3] In contrast to several other government witnesses, Douglas does not contend that the disclosures as to Rudolph are in any way deficient.

part.[4] And while his response insinuates an intention to do so at trial, his response does not identify any valid basis for a Daubert challenge. Douglas declares that Rudolph's proposed testimony is "flatly inadmissible for several reasons," but the court has searched his response in vain for any articulation of those reasons.

Nevertheless, because it seems no deadline was previously set specifically for filing Daubert motions, and because the trial of the case has been continued to February, there is now adequate time for Douglas to file and the court to resolve a Daubert motion as to Rudolph in advance of trial.[5] Accordingly,

---

[4] Notably, Douglas argued in his response that because the government had not yet made the supplemental disclosures as to Rudolph which were ordered by the magistrate judge on July 5, 2023, see Dkt. 129, the court should not consider the government's motion as to Rudolph until after the government had made its supplemental disclosures and Douglas had "filed any motion in limine or Daubert motion that is appropriate as to the purported testimony." He urged that the court should reserve ruling until it had "seen Mr. Douglas's motion or motions as to Rudolph." Yet despite Douglas's repeated acknowledgment that the whole point of the government's motion is that it seeks *pretrial* admission of Rudolph's testimony, Douglas has not filed a *pretrial* motion in limine or Daubert motion as to her testimony and instead suggests that the issue of the admissibility of her testimony should be addressed at trial.

[5] Douglas filed motions requesting Daubert hearings as to several government witnesses before the government provided supplemental expert disclosures ordered by the magistrate judge. The court allowed Douglas to supplement those motions following the government's supplemental disclosures, and to do so by September 5, 2023.

6

the court will give Douglas until Tuesday, November 28, 2023, to file a Daubert motion as to Rudolph, should he choose to do so. If no motion is filed, the court will grant the government's motion to admit her testimony, as her qualifications to render her proffered opinions appear adequate and her testimony appears facially reliable.[6]

Based on the foregoing, it is ordered that defendant Douglas shall have until November 28, 2023 to file any Daubert motion as to Krystal Rudolph, failing which the court will grant the government's motion to admit Rudolph's testimony.

SO ORDERED this 16th day of November, 2023.

---

[6] Although Douglas asserts that the government has failed to address Rudolph's methodology, the Fifth Circuit has recognized that there are some areas of expertise in which the opinions "cannot have the exactness of hard science methodologies"; thus, trial judges have broad discretion to determine "whether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular case." United States v. Simmons, 470 F.3d 1115, 1123 (5th Cir. 2006) (quoting Jenson v. Eveleth Taconite Co., 130 F.3d 1287, 1297 (8th Cir. 1997)). Where such testimony is at issue, "other indicia of reliability are considered under Daubert, including professional experience, education, training, and observations." Id. (citing as example Pipitone v. Biomatrix, Inc., 288 F.3d 239, 247 (5th Cir. 2002) (finding expert's testimony reliable under Daubert where "based mainly on his personal observations, professional experience, education and training")). See also America Can! v. Arch Ins. Co., 597 F. Supp. 3d 1038, 1048–49 (N.D. Tex., 2022) ("When assessing the reliability of non-scientific testimony, courts consider other factors including whether the expert has sufficient personal knowledge, work experience, or training to support the opinions offered.) (citing Fed. R. Evid. 702; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150-51, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).

7

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE